SLIP OPINION

Cite as 2014 Ark. 236

# SUPREME COURT OF ARKANSAS

No. CV–14–371

| | |
|---|---|
| ARKANSAS STATE BOARD OF ELECTION COMMISSIONERS AND DOYLE WEBB, ON BEHALF OF THE REPUBLICAN PARTY OF ARKANSAS<br>APPELLANTS | **Opinion Delivered** May 16, 2014<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT [NO. 60CV-14-1019] |
| V. | HONORABLE TIMOTHY DAVIS FOX, JUDGE |
| PULASKI COUNTY ELECTION COMMISSION; LEONARD A. BOYLE, SR., CHRIS BURKS, AND ALEX REED, IN THEIR OFFICIAL CAPACITIES AS THE COMMISSIONERS OF THE PULASKI COUNTY ELECTION COMMISSION; AND LARRY CRANE, IN HIS OFFICIAL CAPACITY AS THE PULASKI COUNTY CIRCUIT/COUNTY CLERK<br>APPELLEES | SUBSTITUTED OPINION<br><br>AFFIRMED IN PART; VACATED IN PART.<br>TEMPORARY STAY DISSOLVED. |

**PAUL E. DANIELSON, Associate Justice**

Appellants, the Arkansas State Board of Election Commissioners ("ASBEC") and Doyle Webb, on behalf of the Republican Party of Arkansas, appeal from the Pulaski County Circuit Court's findings of fact and conclusions of law and order of summary judgment in favor of appellees, the Pulaski County Election Commission; Leonard A. Boyle, Sr., Chris Burks, and Alex Reed, in their official capacities as the Commissioners of the Pulaski County Election Commission; and Larry Crane, in his official capacity as the Pulaski County

Circuit/County Clerk (collectively, "PCEC"). In its orders, the circuit court declared that Act 595 of 2013, which amended the Arkansas election code to require that voters provide proof of identity when voting, was unconstitutional and that certain emergency rules promulgated by the ASBEC relating specifically to absentee voters were also unconstitutional because the rules were derived from the Act and violated article 3, sections 1 and 2, of the Arkansas Constitution.[1] The ASBEC asserts two points on appeal: (1) that the circuit court erred in declaring Act 595 unconstitutional and (2) that its rules relating to absentee voters did not exceed the scope of its authority. Webb also asserts two points on appeal: (1) that the ASBEC was within its authority when it adopted the rules at issue and (2) that the PCEC lacked standing to bring its declaratory-judgment action. We affirm the circuit court's grant of summary judgment in part because the circuit court was correct that the rules relating to absentee voters promulgated by the ASBEC were unconstitutional; however, we vacate its grant of summary judgment in part because the circuit court erred in declaring Act 595

---

[1]Those sections provide:

Except as otherwise provided by this Constitution, any person may vote in an election in this state who is:
(1) A citizen of the United States;
(2) A resident of the State of Arkansas;
(3) At least eighteen (18) years of age; and
(4) Lawfully registered to vote in the election.

Elections shall be free and equal. No power, civil or military, shall ever interfere to prevent the free exercise of the right of suffrage; nor shall any law be enacted whereby such right shall be impaired or forfeited, except for the commission of a felony, upon lawful conviction thereof.

Ark. Const. art. 3, §§ 1, 2.

unconstitutional, as that issue was not pled or developed before the circuit court. We further dissolve the previously entered temporary stay.

On March 12, 2014, the PCEC filed a petition for declaratory judgment in the circuit court and named the ASBEC as defendants. In its petition, the PCEC averred that it was charged with overseeing and administering the counting of absentee ballots and that Crane was the custodian of absentee ballots for the county. The PCEC asserted that, some time after the General Assembly's enactment of Act 595 of 2013, the ASBEC approved emergency changes to its Rules for Voter Identification and its Rules on Poll Watchers, Vote Challenges, and Provisional Voting. It contended that these changes were implemented by the ASBEC to establish a method, similar to the statutory procedure for in-person voters, for an absentee voter to be notified and to be given the opportunity to cure any deficiency resulting from the failure to submit the statutorily required identification with his or her absentee ballot.[2] The PCEC claimed that the ASBEC's adopted rules conflicted with both the Arkansas Code and the opinions of the Arkansas Attorney General and that the conflict caused uncertainty for the PCEC with regard to the administration of elections, specifically, its processing of absentee ballots. The PCEC further asserted that the ASBEC did "not have the authority to extend the statutory scheme that applies solely to an in person voter to an absentee voter merely by adopting a rule allowing the voter to return the required identification that was not submitted with the ballot." It urged that the ASBEC's authority was "one of implementation rather

---

[2]Due to their length, the emergency rules at issue are attached as an appendix to this opinion. The appendix is attached to the official, electronically reported opinion and the opinion on file in the Supreme Court Clerk's Office.

than creation" and that the ASBEC had "exceeded its authority by adopting and implementing rules that create procedures to allow the counting of absentee ballots that should not be counted pursuant to statutes." In its subsequent amended petition, the PCEC alleged that the rules adopted by the ASBEC conflicted with the election statutes, resulting in a violation of the separation-of-powers doctrine.

Webb was granted permissive intervention, and the circuit court entered a scheduling order in which it stated that all the parties had agreed that the matter involved a question of law that was ripe for summary judgment. In accord with the circuit court's scheduling order, each party filed a summary-judgment motion and response. In its motion for summary judgment, the PCEC contended that the rules of the ASBEC were not in accordance with the law. Specifically, the PCEC argued that, by creating a "cure period" for absentee voters who failed to submit with their absentee ballots the identification required by Arkansas Code Annotated § 7-5-201(d)(1)(B) (Supp. 2013) (effective Jan. 1, 2014), the ASBEC's emergency rules violated the separation-of-powers doctrine because Act 595 did not provide for a cure period or procedure for absentee voters—only in-person voters. The PCEC urged that the ASBEC had attempted to legislate for the General Assembly by promulgating its emergency rules and that it had acted outside the scope of its authority by infringing on a legislative function; consequently, the PCEC sought a declaration that the rules were invalid because they violated separation of powers. It contended that, had the General Assembly intended for absentee voters to have a period in which to cure any deficiency in the provision of the requisite identification, it could have so provided, but did not. By promulgating rules that

4

created an otherwise unprovided-for cure period for absentee voters, the PCEC claimed, the ASBEC substituted its judgment for that of the legislature and enacted rules that were contrary to law.

The ASBEC, in its motion for summary judgment, asserted that, pursuant to Ark. Code Ann. § 7-4-101(f)(5) (Supp. 2013), it was authorized to promulgate the emergency rules because the rules were necessary to assure fair and orderly election procedures. According to the ASBEC, it had merely corrected an unfair situation in which in-person voters had been given by statute the opportunity to cure any failure to provide the identification required to vote, but absentee voters had not. The ASBEC maintained that nothing in the election code prohibited it from promulgating such rules and that it was empowered "to fill the gap created by [the] legislature's silence" in order to achieve fairness.

In Webb's cross summary-judgment motion, he too asserted that the ASBEC had acted within its authority when it adopted the emergency rules to "assure even and consistent application" of the voter-identification laws. Webb averred that the rules furthered the intent of the General Assembly that all voters be given an equal opportunity to remedy any issues regarding their identity and that the "only thing" missing from Act 595 "was a procedure that could be used by absentee voters to 'cure' their ballots." He argued that the ASBEC provided that procedure when it promulgated its rules and that the rules were necessary to remedy any disparity between in-person voters and absentee voters and to eliminate any potential constitutional problem arising from that disparity. Finally, Webb contended, the PCEC lacked standing to bring an action for declaratory relief because the rules passed by the ASBEC

5

did not injure, or threaten to injure, the PCEC. The circuit court took the matter under advisement.

In its orders, the circuit court granted summary judgment to the PCEC and denied summary judgment to both the ASBEC and Webb, finding in relevant part:

> 1. All parties are in agreement that there are no material issues of fact in dispute, and the court agrees with the parties.
> 2. The plaintiffs' *Motion for Summary Judgment* should be and is hereby granted. The subject *Emergency Rules* are derivative of Act 595 of 2013. Act 595 of 2013 is unconstitutional in that it violates Article 3, Section 1 and Article 3, Section 2 of the Arkansas Constitution. The *Emergency Rules* are also unconstitutional as violative of Article 3, Section 1 and Article 3, Section 2 of the Arkansas Constitution. Accordingly, the *Emergency Rules* are null and void *ab initio*.

Incorporated by reference were the circuit court's findings of fact and conclusions of law, which were filed separately the same day. In that order, the circuit court found that Act 595 of 2013 was unconstitutional because it added "additional qualifications for qualified voters not stated in Article 3, Section 1 of the Arkansas Constitution" and that it unconstitutionally impaired the right of suffrage guaranteed in Ark. Const. art. 3, § 2. It further found that the "subject regulations passed by the defendant Arkansas State Board of Election Commissioners being derivative of Act 595 of 2013, are also unconstitutional, as being violative of both Section 1 and Section 2 of Article 3 of the Arkansas Constitution." The circuit court then declared both Act 595 and the ASBEC's emergency rules void and unenforceable.

Both the ASBEC and Webb filed notices of appeal from the circuit court's orders. After filing the record with this court, the ASBEC filed a petition for emergency stay and expedited consideration with this court, with Webb filing a joinder in that motion. We granted a temporary stay with regard to the circuit court's declaration that Act 595 was

SLIP OPINION

unconstitutional, and we denied the request for stay with regard to the circuit court's declaration that the ASBEC's emergency rules were unconstitutional and void. We further granted the motion for expedited consideration and directed simultaneous briefing by the parties.

I. *Whether the Circuit Court Erred in Finding Act 595 of 2013 Unconstitutional*

We first consider the ASBEC's argument that the circuit court erred in declaring Act 595 of 2013 unconstitutional because the Act's unconstitutionality was neither pleaded nor developed by the parties. It contends that the PCEC was merely seeking a declaratory judgment that the ASBEC's emergency rules were an unconstitutional violation of the separation of powers. It maintains that the PCEC never challenged the constitutionality of the Act, nor did Webb raise any of the claims relating to the Act's constitutionality ruled on by the circuit court. The ASBEC claims that the circuit court acted sua sponte in ruling the Act unconstitutional, and for that reason, its ruling should be reversed. The PCEC disputes that the circuit court acted sua sponte and urges this court to affirm the circuit court's ruling. It contends that Webb challenged the Act's constitutionality in his cross-motion for summary judgment; therefore, the constitutionality of the Act was properly before the circuit court.[3]

Ordinarily, on appeal from a summary-judgment disposition, the evidence is viewed in the light most favorable to the party resisting the motion, and any doubts and inferences

---

[3]We note that, while it did not so state in its brief filed with this court, the PCEC did admit in its response to the ASBEC's petition for emergency stay and expedited consideration that the "allegations in [its] complaint did not challenge the constitutionality of Act 595 itself."

SLIP OPINION

are resolved against the moving party. *See Hobbs v. Jones*, 2012 Ark. 293, 412 S.W.3d 844. However, in a case where the parties agree on the facts, we simply determine whether the appellee was entitled to judgment as a matter of law. *See id.* When parties file cross-motions for summary judgment, as was done in this case, they essentially agree that there are no material facts remaining, and summary judgment is an appropriate means of resolving the case. *See id.* As to issues of law presented, our review is de novo. *See id.* Here, the circuit court quite clearly ruled on the constitutionality of Act 595 of 2013 in granting the PCEC's summary-judgment motion. The question then becomes whether the constitutionality of the Act was properly before the circuit court for a ruling. Based on the record before us, we must conclude that the answer to that question is no.

First, we note that a review of the PCEC's motion for summary judgment, which was granted in part by the circuit court on the basis that the Act was unconstitutional, reveals no argument whatsoever that it was entitled to summary judgment on that basis. We have observed that a trial court cannot grant relief beyond that prayed for in the motion for summary judgment in ruling on that motion. *See, e.g.*, *Young v. Staude*, 280 Ark. 298, 657 S.W.2d 542 (1983) (reversing the trial court where the relief granted was not asked for in the motion for summary judgment and could not be granted).

Further, while the PCEC contends that Webb challenged the constitutionality of the Act in his cross-motion for summary judgment, we disagree. The PCEC points specifically to two assertions among several that were made by Webb in that motion: "Unless the regulations of the State Board are permitted to stand, Voter I.D. laws in Arkansas will be in

violation of the Privileges and Immunities Clause of the Arkansas Constitution"; and "Unless the challenged regulations are permitted to stand, the State of Arkansas will be in violation of the Equal Protection Clauses of both the Arkansas and Federal Constitutions." Although Webb mentions constitutional provisions, we simply cannot construe his statements as direct challenges to the constitutionality of Act 595 itself. We have held that we will not strike down a legislative act on constitutional grounds without first having the benefit of a fully developed adversarial case. *See, e.g.*, *Williams v. Johnson Custom Homes*, 374 Ark. 457, 288 S.W.3d 607 (2008). This maxim applies equally to our circuit courts.

Our review of the record reveals that the Act's constitutionality was neither raised nor developed by any of the parties before the circuit court; it would therefore appear that the circuit court's ruling on the Act's constitutionality was made sua sponte. We must conclude that, by ruling sua sponte on the constitutionality of Act 595, the circuit court erred.

> [L]imiting a trial justice to consideration of those claims raised by the parties in a specific controversy enhances the prospect that any final judgment will proceed from a factual and legal analysis of the actual dispute presented to the court. [*People v. Lybarger*,] 700 P.2d [910,] 915 [(Colo. 1985)]. Absent such restrictions on the exercise of judicial authority, judicial pronouncements become hypothetical rulings on matters that may be extraneous to the real source of contention between the litigants. *Id.* Consequently, it is clear and imperative that a trial justice, in the exercise of his or her judicial authority, not resolve a constitutional issue unless and until such issue is actually raised by the parties to the controversy and a necessity for such a decision is clear and imperative. In sum, a trial justice does not have the authority to sua sponte attack the constitutionality of a statute; it must be raised by a party entitled to make such challenge.

*Devane v. Devane*, 581 A.2d 264, 265 (R.I. 1990) (per curiam) (citing *People v. Lybarger*, 700 P.2d 910 (Colo. 1985)). *See also Martin v. Lowery*, 912 So. 2d 461 (Miss. 2005); *Istre v. Meche*, 770 So. 2d 776 (La. 2000). Accordingly, we vacate in part the circuit court's grant of

summary judgment on the basis that Act 595 is unconstitutional, as that issue was not properly before the circuit court in the instant case.

II.  *Whether the Circuit Court Erred in Finding the ASBEC's Emergency Rules Unconstitutional*

The ASBEC additionally argues that the circuit court erred in declaring its rules unconstitutional because it was authorized to promulgate its emergency rules pursuant to Ark. Code Ann. § 7-4-101(f)(5).  It claims that the rules were necessary to assure that absentee voters are treated fairly and allowed to participate in an orderly election process by giving them the same post-election opportunity to provide the required identification as in-person voters.  The ASBEC asserts that section 7-4-101(f)(5) empowers it to fill the gap created by the legislature's silence to achieve this fairness and that the rules are necessary to assure orderly election procedures.  It urges that Ark. Code Ann. § 7-5-321(c) (Supp. 2013), which sets forth the procedure by which an in-person voter may cure any failure to provide identification, in no way prohibits it from providing that same opportunity to absentee voters by way of its emergency rules, where the statute is silent with respect to absentee voters.

The ASBEC further contends that its rules do not violate Ark. Code Ann. § 7-5-201(d), which sets forth the requisite identification to be submitted by absentee voters with their absentee ballots.  It avers that the statute's use of the term "shall" does not preclude the provision of a cure period should an absentee voter fail to submit the required identification. In addition, it asserts that the General Assembly's silence, by neither granting a cure period to absentee voters nor prohibiting them from having one, cannot be interpreted as the General Assembly's opposition to such a provision; instead, the result of the General

Assembly's silence is its delegation of the decision to the ASBEC, under section 7-4-101(f)(5).

Webb likewise argues that the authority of the ASBEC under Ark. Code Ann. § 7-4-101(f)(5) encompasses the adoption of regulations governing the evaluation and counting of absentee ballots. He contends that nothing in the election code expressly prohibited the ASBEC from providing an equivalent cure period to absentee voters. Webb maintains that because the General Assembly permits an absentee voter to file a provisional ballot pursuant to Ark. Code Ann. § 7-5-412(b) (Supp. 2013), the logical inference is that the General Assembly intended to provide those voters with an opportunity to cure any identity issues associated with their ballots. He avers that the regulations provided a much-needed remedy in the election process.

The PCEC counters that the adoption of the emergency rules by the ASBEC violated the separation-of-powers doctrine because it attempted to legislate for the General Assembly by creating a cure period for absentee voters. It contends that the ASBEC's rules are contrary to statute because there is no provision in the statutes for absentee voters to cast a provisional vote and return later with the proper identification. It further asserts that there is no authority for the ASBEC to promulgate rules that supersede statutes; instead, it contends, the rules of the ASBEC must be consistent with Arkansas law. The PCEC urges that, because the General Assembly did not extend to absentee voters the opportunity to produce identification at a later date as it did to in-person voters, it has "spoken on this issue"; in other words, the PCEC avers, the "mention of a cure period for in-person voters implies the exclusion of a cure period for absentee voters." The PCEC additionally states that, if the ASBEC's stance

on its authority is correct, the ASBEC could rewrite the entire election code "in the interest of fairness and orderliness" any time its revisions are not specifically prohibited by statute. Finally, the PCEC maintains that if absentee ballots are to be treated provisionally and absentee voters are to be given a period of time to remedy any lack of required identification, the correction required would be of a legislative nature, not an administrative one.

Here, the ASBEC and Webb challenge the circuit court's rulings that its emergency rules were unconstitutional and void. As an initial matter, we are cognizant of the circuit court's basis for its ruling that the ASBEC's emergency rules were unconstitutional—because they were derived from Act 595 and violated Ark. Const. art. 3, §§ 1 and 2. While that basis for the circuit court's declaration of unconstitutionality was not raised or developed by the PCEC in its petition for declaratory judgment or its motion for summary judgment, the PCEC did challenge the constitutionality of the rules on the basis that they had been promulgated in violation of the separation-of-powers doctrine, which was argued and well-developed by all parties below. This court may affirm a circuit court where it has reached the right decision, albeit for the wrong reason, so long as the issue was raised and a record was developed below. *See Yanmar Co., Ltd. v. Slater*, 2012 Ark. 36, 386 S.W.3d 439; *Sluder v. Steak & Ale of Little Rock, Inc.*, 368 Ark. 293, 245 S.W.3d 115 (2006); *In re Estate of Gordon v. Ford Motor Co.*, 320 Ark. 699, 898 S.W.2d 471 (1995).

Pursuant to Ark. Code Ann. § 7-5-201(d)(1) (effective Jan. 1, 2014), as amended by Act 595 of 2013, with limited exceptions,

> any person desiring to vote in this state shall:
> (A) Present proof of identity to the election official when appearing to vote in

person either early or at the polls on election day; or

      (B) When voting by absentee ballot, submit with the ballot a copy of a current and valid photo identification or a copy of a current utility bill, bank statement, government check, paycheck, or other government document that shows the name and address of the voter unless the voter is:

      (i) A member of the uniformed services on active duty who is absent from the county on election day because of active duty;

      (ii) A member of the merchant marine who is absent from the county on election day because of his or her service in the merchant marine; or

      (iii) The spouse or dependent of a member identified in (d)(1)(B)(i) or (d)(1)(B)(ii) who is absent from the county on election day because of the active duty or service of the member.

"A voter who desires to cast an absentee ballot but who does not meet the identification requirements . . . may cast his or her absentee ballot by mail, and the absentee ballot shall be considered as a provisional ballot." Ark. Code Ann. § 7-5-412(b). At issue in the present case are certain rules promulgated by the ASBEC that establish an entire procedure by which an absentee voter, who fails to submit the identification or documentation with his or her ballot as required under section 7-5-201(d)(1)(B), shall be notified of the deficiency and can remedy the deficiency in order to have his or her ballot counted. *See* 167 Ark. Gov't Reg. 64 (LexisNexis Apr. 2014); 167 Ark. Gov't Reg. 54 (LexisNexis Apr. 2014). The procedure established by the ASBEC for absentee voters is similar to that established by the General Assembly in Ark. Code Ann. § 7-5-321 (Supp. 2013), for in-person voters who fail to present proof of identity. We must determine whether the ASBEC lacked the authority to create a procedure that had not been provided by the General Assembly so as to violate separation of powers.

The separation-of-powers doctrine is a "basic principle upon which our government is founded, and should not be violated or abridged." *Federal Express Corp. v. Skelton*, 265 Ark.

187, 198, 578 S.W.2d 1, 7 (1979). The doctrine is embodied in the provisions of our state constitution:

> The powers of the government of the State of Arkansas shall be divided into three distinct departments, each of them to be confided to a separate body of magistracy, to-wit: Those which are legislative, to one, those which are executive, to another, and those which are judicial, to another.

> No person or collection of persons, being of one of these departments, shall exercise any power belonging to either of the others, except in the instances hereinafter expressly directed or permitted.

Ark. Const. art. 4, §§ 1, 2.

We have previously observed that our government is composed of three separate, independent branches: legislative, executive, and judicial. *See Skelton*, 265 Ark. 187, 578 S.W.2d 1. Each branch has certain specified powers delegated to it. *See id.* The legislative branch of our state government has the power and the responsibility to proclaim the law through statutory enactments. *See id.* The judicial branch has the power and the responsibility to interpret the legislative enactments. *See id.* The executive branch has the power and the responsibility to enforce the laws as enacted and interpreted by the other two branches. *See id.*

The State Board of Election Commissioners has the authority to "[f]ormulate, adopt, and promulgate all necessary rules to assure even and consistent application of voter registration laws and fair and orderly election procedure." Ark. Code Ann. § 7-4-101(f)(5). The ASBEC and Webb claim that the ASBEC had the authority to promulgate the rules at issue because the General Assembly was silent on the matter and because nothing in the election code prohibited it from doing so. To that end, the ASBEC contends, the General

Assembly delegated the decision to it because the General Assembly was presumed to know the powers of the ASBEC.

We find the arguments by the ASBEC and Webb unpersuasive. This court has held that "there must be strict compliance with statutory provisions regarding the application for and casting of absentee ballots." *Womack v. Foster*, 340 Ark. 124, 153, 8 S.W.3d 854, 871 (2000). Moreover, the law is elementary that an agency has no right to promulgate a rule or regulation contrary to a statute. *See McLane Co., Inc. v. Weiss*, 332 Ark. 284, 965 S.W.2d 109 (1998).

In the instant case, it is undisputed that, while the General Assembly provided in Ark. Code Ann. § 7-5-321 a method by which an in-person voter could cure any failure to provide proof of identity, the General Assembly did not provide a similar method for absentee voters. *See also* Op. Ark. Att'y Gen. No. 12 (2014); Op. Ark. Att'y Gen. No. 18 (2014). The General Assembly clearly knew how to provide a remedy to absentee voters. Therefore, had the legislature intended to extend the same remedy to absentee voters, it could have so expressly provided; yet, it did not. We certainly cannot presume why the General Assembly did not, but this court has previously acknowledged a difference between absentee voters and other voters. *See, e.g.*, *Womack*, 340 Ark. 124, 8 S.W.3d 854. Where the General Assembly has so evidently not provided a procedure for absentee voters similar to that provided for in-person voters, it is clear to this court that the ASBEC's emergency rules conflict with the election code, because the ASBEC created a procedure that did not exist, and the legislature did not intend for it to exist.

The ASBEC and Webb contend that the ASBEC was given the authority to adopt any regulations necessary to fill statutory gaps and to correct oversights by the General Assembly. However, this contention contravenes the basic principle of separation of powers. By promulgating the emergency rules that it did, the ASBEC was legislating. This court has previously observed it is "not the business of the courts to legislate; and, if a change in the law in this respect is desired, the General Assembly is the branch of government whence the change must come." *Southern Tel. Co. v. King*, 103 Ark. 160, 165, 146 S.W. 489, 491 (1912). It is not the courts' business to legislate; likewise, it was not the business of the ASBEC, as part of the executive branch, to do so.

The ASBEC was given the authority to promulgate rules to *assure* fair and orderly election procedures; it was not given the authority to *create* those election procedures where the legislature had not. Had the General Assembly intended to extend the cure provisions extended to in-person voters by Ark. Code Ann. § 7-5-321 to absentee voters, it presumably would have included the appropriate language. However well intended the ASBEC's actions may have been, any change in the law should have come from the legislature, the only branch of our government that has been delegated the power to proclaim the law through statutory enactments.

An administrative agency may not, under the guise of a regulation, substitute its judgment for that of the legislature in administering a legislative act. *See* 73 C.J.S. *Public Administrative Law & Procedure* § 163 (2014). As we have previously observed with respect to the ASBEC's authority under a constitutional provision, the authority of the ASBEC under

16

section 7-4-101(f)(5) is to implement, not create, and we cannot say that anything in the statute, as set forth above, permits the ASBEC to create a law when the General Assembly has not done so. *See, e.g., Faubus v. Fields*, 239 Ark. 241, 388 S.W.2d 558 (1965). *See also* 2 Am. Jur. 2d *Administrative Law* § 132 (2014) ("An administrative agency cannot promulgate rules or regulations that contravene the will of the legislature and can only promulgate rules to further the implementation of the law as it exists."). For these reasons, we affirm the circuit court's grant of summary judgment in part, based on its ruling that the ASBEC's emergency rules were unconstitutional, as the circuit court reached the right decision, but stated the wrong reason.[4]

### III. *Whether the PCEC Lacked Standing*

Webb also challenges the standing of the PCEC to bring its declaratory-judgment action. He contends that the PCEC has not stated, and cannot state, the requisite injury or threat of injury required to bring an action for declaratory judgment in challenging a rule pursuant to Ark. Code Ann. § 25-15-207 (Repl. 2002).[5] However, Webb's argument is not preserved for our review. While Webb raised the issue of the PCEC's standing to the circuit court, the circuit court did not rule on it. It was incumbent on Webb to obtain a ruling, and

---

[4]Webb additionally argues that if the emergency rules are not permitted to stand, the State could be in violation of the Help America Vote Act. However, we are aware of no authority, nor has he cited us to any, that would permit or justify a violation or abridgement of the separation-of-powers doctrine on this basis. *See Skelton, supra.*

[5]That section provides, in pertinent part:
> (a) The validity or applicability of a rule may be determined in an action for declaratory judgment if it is alleged that the rule, or its threatened application, injures or threatens to injure the plaintiff in his person, business, or property.

Ark. Code Ann. § 25-15-207(a).

SLIP OPINION

his failure to do so constitutes a waiver of the issue. *See Peoples Bank & Trust Co. of Van Buren v. Wallace*, 290 Ark. 589, 721 S.W.2d 659 (1986).

Mandate to issue immediately.

Affirmed in part; vacated in part. Temporary stay dissolved.

BAKER and HART, JJ., dissent.

**KAREN R. BAKER, Justice, dissenting.** I cannot join in the majority's analysis of this case, even though I agree that the circuit court erred in ruling on the constitutionality of Act 595 of 2013.

The majority affirms the circuit court's ruling as to the rules on the basis that the circuit court reached the right result, although for the wrong reason. However, the theory of "right result, wrong reason" is not applicable here because the majority opinion reaches a very different result than that reached by the circuit court. The result of the majority's opinion is that absentee ballots will only be cast and counted with proof of identification as required by Act 595, allowing for no curative period. In contrast, the result of the circuit court's ruling was to allow all absentee votes to be cast and counted because no identification was required.

The majority's analysis is actually that the circuit court reached the right ruling, rather than the right result. Ordinarily, the difference between ruling and result would not be significant because the same ruling could be expected to render the same result. However, in this case the distinction is significant. "Result" is defined as "to come about as a consequence." *American Heritage Dictionary*, 1487 (4th ed. 2000). Thus, the result is a

consequence of the ruling, and here, the result is different because some absentee votes will not be counted. *See Searcy Healthcare Center, LLC v. Murphy*, 2013 Ark. 463, ___ S.W.3d ___ (where we declined to apply the "right result wrong reason" theory advanced by Murphy because we could not say the circuit court's order reached the right result.); *but cf. City of Marion v. City of West Memphis*, 2012 Ark. 384, 8, 423 S.W.3d 594, 599 (wherein we affirmed the circuit court and applied the "right result wrong reason" theory because in that case, the circuit court reached the right result in finding that the 3,360 acres became a part of West Memphis, it simply applied the wrong statute.)

Accordingly, I would reverse and remand for further proceedings.

HART, J., joins in this dissent.

*Dustin McDaniel*, Att'y Gen., by: *David A. Curran*, Deputy Att'y Gen., and *C. Joseph Cordi, Jr.*, Sr. Ass't Att'y Gen., for appellant Arkansas State Board of Election Commissioners.

*Ritter Law*, by: *George P. Ritter* and *Bilenda Harris-Ritter*, for appellant Doyle Webb.

*Karla M. Burnett* and *Amanda Mankin-Mitchell*, Pulaski County Attorney's Office, for appellees.

SLIP OPINION

ELECTRONICALLY FILED
2014-Mar-12 14:27:53
60CV-14-1019
C06D06 : 20 Pages

Agency # 108.00

# EMERGENCY
# RULES ON
# POLL WATCHERS,
# VOTE CHALLENGES, AND
# PROVISIONAL
# VOTING

**(Effective April 22, 2006; Revised March 4, 2014)**



## STATE BOARD OF ELECTION COMMISSIONERS
**501 Woodlane, Suite 401N**
**Little Rock, Arkansas 72201**
**(501) 682-1834 or (800) 411-6996**
**www.arkansas.gov/sbec**

ATTACHMENT S

000135

SLIP OPINION

# TABLE OF CONTENTS

Scope of Rules...........................................................................................3

§ 900 Definitions........................................................................................3

§ 901 Failure to Provide Voter Identification
    A. In-Person Voters ........................................................7
    B. Additional Identification Requirement.............................7
    C. Absentee Voters.........................................................7

§ 902 Precinct Voter Registration List
    A. Voter's Name Missing................................................7
    B. "Voted Absentee" Notation.........................................8

§ 903 Poll Watcher Challenges
    A. Official Recognition/Credentials...................................8
    B. Challenges.............................................................9

§ 904 Court-Ordered Extension .....................................................9

§ 905 Voting a Provisional Ballot................................................10

§ 906 Notice to Provisional Voters..............................................11

§ 907 Review of Provisional Ballots............................................12

§ 908 Hearing..........................................................................14

§ 909 Counting Provisional Ballots .............................................14

§ 910 Prosecuting Attorney.......................................................15

§ 911 Preliminary and Unofficial Results.....................................15

§ 912 Official Certified Results..................................................15

§ 913 Effective Date................................................................15

Provisional Voter Envelope (Attachment "A").................................16

List of Provisional Voters (Attachment "B")...................................18

Poll Watcher Authorization Form (Attachment "C")..........................19

000136

**Scope of Rules**

These rules set forth the procedures for poll watchers, challenging votes, and for issuing, processing, and counting provisional ballots. These rules are in addition to and not a substitute for the laws of the State of Arkansas.

**§ 900 Definitions**

(a) Absentee Ballot Processing Site – a place designated by the county board of election commissioners in the courthouse where election clerks for absentee ballots meet on election day for the purpose of processing absentee ballots.[1]

(b) Additional Identification Requirement – documentary identification in addition to proof of identity that certain first-time voters who register by mail must show to cast a regular ballot during early voting or at the polls on election day. Acceptable identification documents include a copy of a current and valid photo identification, or a copy of a current utility bill, bank statement, government check, paycheck or other government document that shows the name and address of the voter.[2]

(c) Administrator - the administrative head of a long-term care or residential care facility licensed by the state.

(d) Ballot Style – a ballot's combination of contests and issues to be voted upon that is unique to each precinct or part of a precinct.

(e) Challenged Ballot Form – the applicable portions of a "provisional voter envelope" (see Attachment "A") that are completed when a poll watcher challenges a voter, identifying the voter whose vote was challenged, the poll watcher, the reason for the challenge, the applicable provisional voter number from the list of provisional voters (see Attachment "B"), poll, precinct, ballot style, and the date and time of the challenge under the signature of both the poll watcher and the challenged voter.

(f) Counting Site – a location selected by the county board of election commissioners with respect to all elections for the processing and/or counting of votes.[3]

(g) County Board of Election Commissioners – the three-member board in each of the 75 counties in this State responsible for conducting all elections within their respective county, including two members elected by the county committee of the majority party and one member elected by the county committee of the minority party or persons appointed by the state chair of either the majority or minority parties to fill a vacancy in that party's position.[4]

(h) Documentation from the Administrator –a letter on facility letterhead, dated and signed by the administrator which specifically identifies the full name of the resident in the body of the letter

---

[1] A.C.A. §§ 7-5-414(a); 7-5-416(a)(1)
[2] A.C.A § 7-5-201(e) as amended by Act 595 of 2013
[3] A.C.A. § 7-1-101
[4] A.C.A. § 7-4-102(a), as amended by Act 1056 of 2011

000137

SLIP OPINION

and is valid for one year after the date it is signed and issued. The letter issued by the administrator can be used by a resident of a long-term care facility as identification during early voting, on election day at a polling location, and when voting by absentee ballot. [5]

(i) Election Clerk – for the purpose of these rules, a person possessing the same qualifications as a poll worker who is designated by the county board of election commissioners to process, count, and canvass absentee ballots[6] under the supervision of the county board.

(j) Election Official – a person who is a member of the county board of election commissioners or a person who is a poll worker designated by a county board of election commissioners to be an election clerk, election judge, or election sheriff.[7]

(k) Eligibility Affirmation – a written affirmation executed by a provisional voter in the presence of the poll worker at the poll stating that he or she is a registered voter in the precinct in which he or she desires to vote and is eligible to vote in that election (see Attachment "A").[8]

(l) First-time Voter Registered by Mail – any registered voter, except those exempted by Arkansas Code Annotated § 7-5-201(e)(2), who has not previously voted in a federal election in the state and whose registration application arrived at the county clerk's office or Secretary of State's office by mail.[9] "First-time voters registered by mail" who do not provide identification when registering are flagged by the county clerk for an additional identification requirement. "First-time voters registered by mail" who provided a valid driver's license number or the last four (4) digits of their social security number on their voter registration application form are considered as having provided identification if a state or local election official can match the driver's license or social security number with an existing state identification record bearing the same number, name and date of birth as provided in the registration. Registration applications arriving in bulk by means other than the mail at the registrar's office or delivered by leaders of voter registration drives are considered to have been delivered in person, not by mail, and are, therefore, not considered "first-time voters registered by mail" and not flagged by the county clerk for the additional identification requirement.

(m) Polling Site – a location selected by the county board of election commissioners where votes are cast.[10]

(n) Poll Watcher – any authorized representative of a candidate, any authorized representative of a group seeking passage or defeat of a measure on the ballot, and any authorized representative of a political party with a candidate on the ballot who is present at a polling site or an absentee ballot processing site to observe and ascertain the identity of persons presenting themselves to vote at the polls or to observe and ascertain the identity of absentee voters for the purpose of challenging any voter in person or for the purpose of challenging any absentee vote. A candidate may be present at an absentee ballot processing site to observe and ascertain the identity of absentee voters for the purpose of challenging any absentee vote. A candidate or an authorized

---

[5] A.C.A. § 7-5-201(d)(2) as amended by Act 595 of 2013 and §16.0 of the Arkansas Secretary of State's Rules on Voter Identification
[6] A.C.A. § 7-5-414
[7] A.C.A. § 7-1-101
[8] A.C.A. § 7-5-308(a)(2)
[9] A.C.A. §§ 7-1-101; 7-5-201(d)
[10] A.C.A. § 7-1-101

Page 4 of 20

000138

SLIP OPINION

representative of a candidate or political party may also be present at all counting sites for the purpose of witnessing the counting of ballots by election officials. A candidate may be present in person during early voting only for the purpose of observing whether or not votes are fairly and accurately cast.[11]

(o) Poll Watcher Authorization Form – an affidavit, in the form specified by law, designating and authorizing a poll watcher. The "poll watcher authorization form" must be filed with the county clerk and a file-marked copy presented to an election official immediately upon entering the polling site, absentee ballot processing site, or counting site. Candidates in person at early voting, attending a counting site or an absentee ballot processing site must present identification, but are not required to present a Poll Watcher Authorization Form (see Attachment "C").[12]

(p) Poll Worker – an election official designated by the county board of election commissioners to be an election clerk, election judge or election sheriff at a polling site.

(q) Precinct – the geographical boundary lines dividing a county, municipality, township, or school district for voting purposes.[13]

(r) Precinct Voter Registration List – a computerized list provided by the county clerk and used by poll workers in each polling place for every election conducted in the state indicating the name and date of the election; identifying the precinct's number and county in which located; and containing the name, address, and date of birth of each registered voter, including those who have been designated inactive, within the precinct with a space for each voter's signature.[14] In any precinct with more than one (1) ballot style, the precinct voter registration list must also identify the district, sub-district, county, municipality, ward, and school zone in which each voter is qualified to vote.[15]

(s) Proof of Identity:

(1) A voter identification card issued by the county clerk pursuant to Act 595 of 2013 OR
(2) A document or identification card that meets all of the following conditions:
    (a) Shows the name of the person to whom the document was issued;
    (b) Shows a photograph of the person to whom the document was issued;
    (c) Is issued by the United States, the State of Arkansas, or an accredited postsecondary educational institution in the State of Arkansas; and
    (d) If displaying an expiration date, the document or card is not expired or expired no more than four (4) years before the date of the election in which the person seeks to vote.
(3) Documents or Identification cards that comply with the above requirements for proof of identity may include, without limitation, the following:
    (a) A driver's license;
    (b) A photo identification card;
    (c) A concealed handgun carry license;

---

[11] A.C.A. §§ 7-5-312; 7-5-316(a); 7-5-413(d); 7-5-416(a)(4); 7-5-527(b); 7-5-615(a)
[12] A.C.A. § 7-5-312(d),(e)
[13] A.C.A. § 7-1-101
[14] A.C.A. § 7-5-107
[15] A.C.A. § 7-5-110

000139

(d) A United States passport;

(e) An employee badge or identification document;

(f) A United States Military identification document;

(g) A student identification card issued by an accredited postsecondary educational institution in the State of Arkansas;

(h) A public assistance identification card; and

(i) A voter identification card as provided under Act 595 of 2013 and rules propounded by the Secretary of State[16]

(t) Provisional Ballot – a ballot cast and/or considered by special procedures to record a vote when there is some question concerning a voter's eligibility or compliance with certain statutory requirements. Provisional ballots are counted upon verification of a voter's eligibility or compliance with those statutory requirements.[17]

(u) Provisional Voter Envelope – an envelope used by poll watchers for voter challenges and by poll workers for voter qualification issues containing information relating to provisional voters, including a provisional voter's eligibility affirmation, the reason for voting provisional, the ballot style voted, the county clerk's certification of the provisional voter's registration status, and the disposition of the provisional ballot upon review by the county board of election commissioners. A "provisional voter envelope" shall have printed on it all the information sought by Attachment "A".

---

[16] A.C.A. § 7-1-101 as amended by Act 595 of 2013

[17] A.C.A. §§ 7-1-101; 7-5-304(c); 7-5-305(a)(8)(B)(ii); 7-5-306(b); 7-5-308; 7-5-312(h); 7-5-412(b); 7-5-416(b)(1)(F)(iii); 7-5-417(a); 7-5-418(d); 7-5-321(c) as provided in Act 595 of 2013

000140

SLIP OPINION

## § 901 Failure to Provide Voter Identification

### A. In-person Voters

A person voting at the polls during early voting or on election day who did not present proof of identity, or, if a resident of a long-term care or residential care facility licensed by the state, who did not provide either proof of identity or documentation from the administrator of the facility attesting that the person is a resident of the facility, shall be offered a provisional ballot.[18]

### B. Additional Identification Requirement

A first-time voter voting at the polls during early voting or on election day who was flagged on the Precinct Voter Registration List for compliance with the additional identification requirement and who did not provide required identification shall be offered a provisional ballot.[19]

### C. Absentee Voters

The absentee ballot of a voter who, if required by law, does not submit with the absentee ballot a copy of current and valid photo identification or a copy of a current utility bill, bank statement, government check, paycheck, other government document that shows the name and address of the voter, or documentation from the administrator shall be considered as a provisional ballot.[20]

## § 902 Precinct Voter Registration List

### A. Voter's Name Missing

When a voter provides his or her name, address, and date of birth to a poll worker, and the voter's name is not on the precinct voter registration list, the poll worker must:
1) Contact the county clerk's office to verify the voter's registration status, and
2) Allow the voter to cast a **REGULAR** ballot (if the county clerk informs the poll worker that the voter is listed as a registered voter of the precinct),[21] or
3) Allow the voter to cast a **REGULAR** ballot (if the county clerk informs the poll worker that the voter transferred his or her registration from another county not later than four (4) days before the election and that the voter is at the correct poll in the new county of registration),[22] or
4) Send the voter to his or her correct polling site where the voter may cast a **REGULAR** ballot (if the county clerk informs the poll worker that the voter is listed as a registered voter at a different precinct in the county), or
5) Allow the voter to cast a **PROVISIONAL** ballot at the disputed polling site (if the county clerk informs the poll worker that the voter is listed as a registered voter at a different precinct in the county, but the voter insists that he or she is at the correct polling site), or

---

[18] A.C.A. § 7-5-321 as provided in Act 595 of 2013
[19] A.C.A. § 7-5-201(e) as amended by act 595 of 2013
[20] A.C.A. § 7-5-201(e) as amended by act 595 of 2013
[21] A.C.A. § 7-5-306(a)
[22] Amend. 51, §10 of the Arkansas Constitution

000141

6) Allow the voter to cast a **PROVISIONAL** ballot (if the county clerk is unable to verify the voter's registration, but the voter contends that he or she is both registered in the precinct in which he or she desires to vote and is eligible to vote).[23]

B. "Voted Absentee" Notation

Upon delivery of an absentee ballot to an individual authorized to receive an absentee ballot, the county clerk shall mark the electronic voter registration record and the precinct voter registration list to indicate that an absentee ballot has been delivered to the voter under the procedures in this section.[24]
Any person to whom an absentee ballot is delivered according to the precinct voter registration list, but who chooses to vote by early voting or to vote at his or her polling site on election day, shall be permitted to cast a provisional ballot at the poll.[25]

## § 903 Poll Watcher Challenges

A. Official Recognition/Credentials

Poll watchers representing a candidate, group, or political party must file a "poll watcher authorization form" (see Attachment "C") with the county clerk of the county in which the polling site, absentee ballot processing site, or counting site is located and present a file-marked copy of the valid form to the election officials immediately upon entering the polling site, absentee ballot processing site, and/or counting site.[26]

A candidate may not be present in person at the polls on election day as a poll watcher. A candidate may be present in person as a poll watcher during the counting and tabulation of ballots and the processing of absentee ballots.[27]

A candidate may be present in person at early voting locations only for the purpose of observing whether or not votes are fairly and accurately cast, but a candidate may not challenge voters as a poll watcher during early voting and may speak only to a designated poll worker.[28] A candidate who is present in person at an early voting location for the purpose of observing may not speak to voters or disrupt the orderly conduct of the election. A candidate who is a public official and who is present in person at an early voting location for the purpose of observing shall not wear on his or her person any uniform, badge, or other apparel or equipment that identifies the candidate as a public official.

A candidate who is present in person at an early voting location for the purpose of observing or during the counting and tabulation of ballots and the processing of absentee ballots as a poll watcher is not required to present a "poll watcher authorization form", but must present some form of identification to an election official immediately upon entering the site.

---

[23] A.C.A. §§ 7-5-306(b); 7-5-418(d)
[24] A.C.A. § 7-5-409(g)
[25] A.C.A. §§ 7-5-201(e); 7-5-305(a)(11); 7-5-411(b)
[26] A.C.A. § 7-5-312(d)
[27] A.C.A. § 7-5-312(a)(1),(e)
[28] A.C.A. § 7-5-413(d)

000142

Only one (1) authorized poll watcher per candidate, group, or party at any one (1) time may be officially recognized as a poll watcher at each location within a polling site where voters identify themselves to election officials and at each location within the absentee ballot processing site where absentee ballots are processed.[29]

Only one (1) authorized poll watcher per candidate or party at any one (1) time may be officially recognized as a poll watcher at the counting of ballots at the polling site, central counting location, or absentee ballot counting location.[30]

Poll watcher rights and responsibilities must be posted in plain view at each polling site, absentee ballot processing site, and counting site.[31]

## B. Challenges

Authorized poll watchers who are officially recognized at a polling site may stand close enough to the place where voters check in to vote so as to hear the voter's name and may challenge an ineligible voter upon notifying a poll worker of the challenge before the voter signs the precinct voter registration list and upon completing a "challenged ballot form" (see Attachment "A").[32]

A poll watcher may challenge a voter only on the grounds that the voter is not eligible to vote in the precinct or that the voter has already voted in the election.[33]

When election clerks appointed by the county election commission to process, count, and canvass absentee ballots read the name and voting precinct of an absentee voter, any qualified poll watcher may challenge the vote in the same manner provided by law for personal voting challenges, and the election clerks must consider the absentee ballot as a provisional ballot.[34]

## § 904 Court-Ordered Extension

A person who votes in an election as a result of a federal or state court order or any other order extending the time established for closing the polls may vote in the election only by casting a provisional ballot. The provisional ballots cast as a result of the order must be separated and held apart from other provisional ballots cast by provisional voters not affected by the order.[35]

---

[29] A.C.A. § 7-5-312(b),(e)
[30] A.C.A. § 7-5-312(c),(e)
[31] A.C.A. § 7-5-312(f)
[32] A.C.A. § 7-5-312(e),(g),(h)
[33] A.C.A. § 7-5-312(g)
[34] A.C.A. §§ 7-5-414; 7-5-417(a)
[35] A.C.A. § 7-5-304(c)

000143

SLIP OPINION

### § 905 Voting a Provisional Ballot

Provisional ballots cast at the polls during early voting or on election day shall be handled as follows:

1) If as a result of a poll watcher challenge, the poll watcher must notify a poll worker of the challenge before the voter signs the precinct voter registration list and must complete a "challenged ballot form" (See Attachment "A"), and a poll worker must inform the voter that his or her ballot is being challenged[36]

2) If as a result of failure to meet an identification requirement, a poll worker must inform the voter of the reason the voter is not allowed to cast a regular ballot.

3) The provisional voter must execute a written eligibility affirmation in the presence of the poll worker stating that he or she is both a registered voter in the precinct in which he or she desires to vote and eligible to vote in the election.[37]

4) The poll worker shall initial the back of the ballot, remove the ballot stub from the provisional ballot, and place the stub in the stub box provided.[38]

5) The provisional voter shall mark his or her ballot.[39]

6) The provisional voter shall place his or her voted ballot in a ballot secrecy envelope marked "PROVISIONAL BALLOT" and seal the envelope (nothing else goes in this envelope).[40]

7) The provisional voter shall then place the sealed ballot secrecy envelope marked "Provisional Ballot," containing his or her voted provisional ballot in a "provisional voter envelope", seal it, and give it to the poll worker.[41]

8) The poll worker must provide the provisional voter a copy of the notice prescribed in §906 (a).[42]

9) The poll worker must make and retain a separate list of the names and addresses of all persons casting a provisional ballot (see Attachment "B").[43]

10) The poll worker must preserve, secure, and separate all provisional ballots from the remaining ballots[44] and forward all sealed "provisional voter envelopes" in a secured container provided for that purpose to the county board of election commissioners after the polls close.

11) The county board of election commissioners will forward in a secured container the sealed "provisional voter envelopes" to the county clerk's office for completion of the certification portion of the envelope.

12) Upon completion of the certification portion of the envelope, the county clerk returns the secured container of sealed "provisional voter envelopes" to the county board for determination before certification of the election results as to whether the provisional ballots are valid and should be counted.[45]

For absentee ballots which become a provisional ballot, the absentee ballot clerk shall place the absentee ballot materials in a provisional voter envelope and should check the "Other" box and write the word "*Absentee*" next to the box marked "Other" on the form provided on the provisional ballot envelope (Attachment "A"). The absentee ballot clerk should also indicate the reason for making the

---

[36] A.C.A. §§ 7-5-308(a)(1); 7-5-312(e),(h)
[37] A.C.A. § 7-5-308(a)(2)
[38] A.C.A. § 7-5-308(a)(3)
[39] A.C.A. § 7-5-308(a)(4)
[40] A.C.A. § 7-5-308(a)(5)
[41] A.C.A. § 7-5-308(a)(6)
[42] A.C.A. § 7-5-308(a)(7)
[43] A.C.A. § 7-5-308(a)(8)
[44] A.C.A. § 7-5-308(b)
[45] A.C.A. §§ 7-5-308(d)(1); 7-5-417(c)

000144

absentee ballot provisional (i.e. *No ID* or *Poll Watcher Challenge*) on the form provided on the provisional ballot envelope (Attachment "A"). For inconsistent Voter Statements, the absentee clerk should write "*inconsistent statement*" after the word "*Absentee*" after the "Other" box on the provisional ballot envelope.

## § 906 Notice to Provisional Voters

(a) Whenever a person casts a provisional ballot at the polls during early voting or on election day, the poll worker must provide the voter a copy of a notice that includes the following information:
- That the provisional voter will be notified by first class mail whether his or her vote was counted and the reason if not counted.[46]
- That a provisional voter who cast a provisional ballot for failure to present proof of identity may present proof of identity or an affidavit of indigence or religious objection to the county clerk or the county board of election commissioners by noon of the first Monday following the election in order for the provisional ballot to be counted;
- The address, telephone number, and regular office hours of the county clerk;
- The dates of any meetings of the county board of election commissioners scheduled before noon of the next Monday following the election;
- An explanation of the provisional voting process; and
- The date, time, and address of a hearing for the voter if the provisional ballot is rejected.

(b) Whenever an absentee ballot is made provisional for failure to submit required identification with the ballot, the county election commission must send notice by first-class mail to the voter's absentee mailing address and the voter's registration address and deliver such notice electronically or by telephone, if possible. The notice shall include the following information:
- That the provisional voter will be notified by first class mail whether his or her vote was counted and the reason if not counted.[47]
- That a provisional voter who cast a provisional ballot for failure to provide required identification may present the required identification or an affidavit of indigence or religious objection to the county clerk or the county board of election commissioners in any matter allowed for in § 806 of the Rules for Voter Identification by noon of the first Monday following the election in order for the provisional ballot to be counted;
- The address, telephone number, and regular office hours of the county clerk;
- The dates of any meetings of the county board of election commissioners scheduled before noon of the next Monday following the election;
- An explanation of the process by which the voter's ballot was made provisional; and
- The date, time, and address of a hearing for the voter if the provisional ballot is rejected.

(c) The system that the Secretary of State has established for provisional voters to be notified whether their ballot was counted requires written notice mailed first class to the provisional voter by the county board of election commissioners. Sample notices may be obtained from the Secretary of State's office. The notice shall include the following:
- A statement whether the provisional ballot was counted or was not counted;

---

[46] A.C.A. § 7-5-308(c)
[47] A.C.A. § 7-5-308(c)

000145

- If the provisional ballot was preliminarily determined to be invalid, the reason the ballot was not counted; and
- The date, time, and address of a hearing by the county board regarding the voter's eligibility to vote in the election.

(d) Access to information about an individual provisional ballot shall be restricted to the individual who cast the ballot.[48]

## § 907 Review of Provisional Ballots

The county board of election commissioners shall determine whether provisional ballots are valid before certifying the election.[49]

The county board shall examine the sealed outer "provisional voter envelope" (see Attachment "A"), including the challenged ballot portion, if any, the eligibility affirmation of the provisional voter, if any, and the county clerk's certification of the provisional voter's registration status without unsealing the outer "provisional voter envelope" or removing or opening the inner ballot secrecy envelopes marked "PROVISIONAL BALLOT" containing the provisional voter's voted ballot.

Based upon the examination of the sealed outer "provisional voter envelope" and any additional information available, the county board shall make a determination of whether the provisional ballot was cast by an eligible voter and was the correct ballot for the precinct of the voter's residence according to the precinct listed on the voter's eligibility affirmation or the registration address of the absentee voter.[50]

If the county board makes an initial determination that the provisional ballot will not be counted, the county board must notify the provisional voter of the reason for rejecting the provisional voter's ballot and of the date, time, and place for a hearing and other information as provided in these rules before a final determination is made.[51]

When the information on the outer "provisional voter envelope" indicates that a voter at the polls cast a provisional ballot for both failure to present proof of identity and another reason, the county board shall first determine whether the voter is eligible to vote in the precinct. If it is determined that the voter who cast a provisional ballot for failure to provide proof of identity and for another reason is eligible to vote, or if the provisional ballot was cast only for the reason that the voter failed to present proof of identity, then the county board shall count the ballot if proof of identity or an affidavit of indigence or religious objection has been provided to the county board or the county clerk by noon of the first Monday following the election.

When the information on the outer "provisional voter envelope" indicates that an absentee ballot is being considered as a provisional ballot for both failure to present identification and another reason, the county board shall first determine whether the voter is eligible to vote in the precinct. If it is determined that the voter whose ballot is being considered as a provisional ballot for failure to

---

[48] A.C.A. § 7-5-308(c)(3)
[49] A.C.A. § 7-5-308(d)(1)
[50] A.C.A. § 7-5-308(d)(2)
[51] *Dotson v. Richey*, 211 Ark. 789 (1947)

000146

provide identification and for another reason is eligible to vote, or if the ballot was made provisional only for the reason that the absentee voter failed to present identification, then the county board shall count the ballot if identification has been provided to the county board or the county clerk by noon of the first Monday following the election pursuant to these rules and the Rules for Voter Identification.

When reviewing the provisional ballot cast at the polls by a flagged first-time voter who registered by mail and did not meet the additional identification requirement when registering or voting, the county board should not base its initial determination of whether or not to count the ballot solely on the provisional voter's failure to meet the additional identification requirement. As long as proof of identity has already been provided, the provisional ballot should be rejected only if the voter failed to provide additional identification and there is a determination, independent of the failure to meet the additional identification requirement, that the person who voted is not eligible to vote in the precinct.[52]

When reviewing the provisional ballot of any person who was delivered an absentee ballot according to the precinct voter registration list, but then chose to cast a provisional ballot at an early voting or election day polling site, the county board shall:
   1) Count the voter's absentee ballot rather than the provisional ballot cast at the polling site, if the absentee ballot was returned and processed for counting on election day before the time of counting provisional ballots, or
   2) Count the voter's provisional ballot cast at the polling site, if the voter's absentee ballot was not returned or was not processed for counting on election day by the time of counting provisional ballots.

The county board must complete the disposition portion of the "provisional voter envelope" and notify each provisional voter by first class mail as to whether or not his or her provisional ballot was counted.

---

[52] § 803 of the State Board of Election Commissioners' Rules on Voter Identification

000147

**§ 908 Hearing**

Provisional voters shall be allowed to appear before the county board to contest the county board's initial decision to disqualify their ballots and to present evidence that they were registered to vote and voted the correct ballot for the precinct of their residence or, if applicable, that they presented required identification during early voting, on election day or by noon of the first Monday after the election.

If these provisional voters do not appear for a hearing or otherwise provide satisfactory evidence of their registration status or required identification, then the ballot shall not be counted.

The commission then completes the election commission's portion of the list of provisional voters form (see Attachment "B"), and all records are preserved in accordance with the laws governing preservation of ballots and election materials.

The process of hearing and final decision must be completed by the deadline to certify the election results.

**§ 909 Counting Provisional Ballots**

Unless enjoined by a court of competent jurisdiction, a provisional ballot shall be counted if:
1) It is cast by a registered voter who provided required identification and it is the correct ballot for the precinct of the voter's residence according to the precinct listed on the voter's eligibility affirmation; or
2) It is cast by a registered voter who failed to present proof of identity at a polling place during early voting or on election day but who presents proof of identity or an affidavit of indigence or religious objection to having his or her photograph made to the county clerk or the county board no later than the first Monday following the election; or
3) It is the absentee ballot of a voter who is required to provide identification with his or her ballot and who failed to provide the required identification, but who complies with the post-election submission procedures contained in the Rules for Voter Identification § 806. [53]

In counting provisional ballots, the county board must ensure the secrecy of the ballot pursuant to Amendment 81 of the Arkansas Constitution.

Provisional ballots are counted as follows:
1) the commission completes the election commission's portion of the list of provisional voters form (see Attachment "B"),
2) an election official opens the outer "provisional voter envelope" (see Attachment "A") for those on the list marked to be counted (see Attachment "B"),
3) the election official removes the sealed inner ballot secrecy envelope marked "PROVISIONAL BALLOT" containing the provisional voter's voted ballot,
4) the election official places the sealed inner ballot secrecy envelope marked "PROVISIONAL BALLOT" containing the provisional voter's voted ballot in a ballot box provided for that purpose,

---

[53] A.C.A. § 7-5-308(d)(2); 7-5-321(c) as provided in Act 595 of 2013

000148

5) when all the outer "provisional voter envelopes" have been opened and all the sealed inner ballot secrecy envelopes placed in the ballot box, the election official shakes the ballot box thoroughly to mix the sealed envelopes containing the provisional ballots,

6) the ballot box is then opened, the secrecy envelopes containing the voted provisional ballot opened, and the provisional ballots canvassed and counted, and

7) all records are preserved in accordance with the laws governing preservation of ballots and election materials.

## § 910 Prosecuting Attorney

Following each election, the county board of election commissioners may review the precinct voter registration lists for voters not providing identification at the polls and forward the information to the prosecuting attorney for investigation of possible voter fraud.[54]

If, upon examination of any provisional ballot, the county board suspects that a violation of election laws has occurred, the county board may refer the matter to the prosecuting attorney for that county.[53]

## § 911 Preliminary and Unofficial Results

The processing and counting of provisional ballots, including hearings, shall not delay the declaration of preliminary and unofficial results required by Arkansas Code Annotated § 7-5-701. When reporting preliminary and unofficial results, the county board of election commissioners should also report the number of uncounted provisional ballots pending review and the number of outstanding overseas absentee ballots.

## § 912 Official Certified Results

The official certified results of the election shall include the votes cast on all provisional ballots that were determined by the county board of election commissioners to be valid.

## § 913 Effective Date

These emergency rules are effective upon filing.

---

[54] A.C.A. § 7-5-305(a)(8)(B)(iii), (iv)
[53] A.C.A. § 7-5-308(e)

Page 15 of 20

000149

SLIP OPINION

Attachment "A"  **PROVISIONAL VOTER ENVELOPE**

Provisional Voter Number: _____  Date: _____  Time: _____

Poll Name: _____  Precinct #: _____  Ballot Style: _____

---

### CHALLENGED BALLOT FORM
#### (To be completed when a poll watcher challenges a voter)

Name of Voter Challenged: _____

Name of Poll Watcher: _____

Entity Represented: _____
(Name of candidate, group or party the poll watcher represents from the Poll Watcher Affidavit)

Reason for Challenge: _____

**Signature of Poll Watcher:** _____

**Signature of Challenged Voter:** _____

---

### PROVISIONAL VOTER ELIGIBILITY AFFIRMATION
#### (To be completed on voter qualification issues)

Voter's Name: _____  Prior Name: _____

Current Street Address: _____  Prior Street Address: _____

City, State, Zip: _____  Prior City, State, _____

Phone Number(s): _____

Date of Birth: _____  Provided Identifi_____  Yes ☐  No ☐

I, _____ hereby affirm that the information provided is true and correct and that to the best of my knowledge I am a registered voter in this precinct and am eligible to vote in this election.

*I understand that the County Board of Election Commissioners will count my ballot only upon verification of my voter registration status or, if applicable, presentation of proof of identity or an affidavit of indigence or religious objection.*

**Witnessed by:**

_____
Signature of Poll Worker

**Reason for Voting Provisional**
(To be completed by a poll worker)

☐ Poll Watcher Challenge

☐ No Proof of Identity Provided

☐ Not on Precinct Voter Registration List

☐ First-time Voter Flagged to Show Additional ID
   (No Additional ID Provided)

☐ Previously Sent Absentee Ballot

☐ Court-ordered Voting Extension

☐ Other

**Ballot Style**
(To be completed by a poll worker)

Ballot Style _____ given to the provisional voter based upon the voter's affirmation of eligibility for this jurisdiction.

_____
Signature of Poll Worker

000150

SLIP OPINION

# CERTIFICATION
### (To be completed by the County Clerk's Office)

County: _____

---

**A. PROVISIONAL VOTER**

**Match   No Match**

☐   ☐   Name: _____

☐   ☐   Prior Name: _____

☐   ☐   Current Address: _____

☐   ☐   Prior Address: _____

☐   ☐   Date of Birth: _____

---

I, _____, hereby certify that a data search was performed
<span style="font-variant:small-caps">(printed name of County Clerk or Deputy)</span>
on the foregoing information in an effort to verify the voter registration status for the
individual voting this provisional ballot and hereby confirm that the voter is registered in
in _____
_____ in _____
(Name of County)                                                                     (Precinct Number)

Signature of County Clerk or Deputy

I, _____, hereby certify that a data search was performed
(printed name of County Clerk or Deputy)
on the foregoing information in an effort to verify the voter registration status for the
individual voting this provisional ballot, but was unable to confirm the provisional voter's
registration status.

_____
**Signature of County Clerk or Deputy**

SAMPLE

---

### DISPOSITION OF PROVISIONAL BALLOT
### (To be completed by the County Board of Election Commissioners)

**Yes   No**

☐   ☐   Provisional Ballot Counted, if not, Reason Not Counted: _____

_____

☐   ☐   Provisional Voter Notified by First Class Mail   Date: _____

_____   _____   _____
**County Election Commissioner   County Election Commissioner   County Election Commissioner**
**(At least one Election Commissioner must sign.)**

---

000151

SLIP OPINION

Attachment "B"

# LIST OF PROVISIONAL VOTERS

Arkansas Code Annotated § 7-5-308 requires poll workers to make a list of the names and addresses of all persons voting a provisional ballot and requires county election commissions to determine the validity of each provisional ballot prior to certification of the election.

Date of Election: _____  Poll Name: _____

| No. | TO BE COMPLETED BY POLL WORKERS | | Precinct | TO BE COMPLETED BY ELECTION COMMISSION | | |
| --- | --- | --- | --- | --- | --- | --- |
| | Voter's Name | Voter's Address | | Vote counted | | If not counted, reason |
| | | | | Y | N | |
| 1 | | | | | | |
| 2 | | | | | | |
| 3 | | | | | | |
| 4 | | | | | | |
| 5 | | | | | | |
| 6 | | | | | | |
| 7 | | | | | | |
| 8 | | | | | | |
| 9 | | | | | | |
| 10 | | | | | | |
| 11 | | | | | | |
| 12 | | | | | | |
| 13 | | | | | | |
| 14 | | | | | | |
| 15 | | | | | | |
| 16 | | | | | | |
| 17 | | | | | | |
| 18 | | | | | | |
| 19 | | | | | | |
| 20 | | | | | | |

_____  _____  _____
Commissioner Signature   Commissioner Signature   Commissioner Signature

000152

SLIP OPINION

Attachment "C"      **POLL WATCHER AUTHORIZATION FORM**
                    *[A.C.A. § 7-5-312]*
                    **Representative of a Candidate**

I, _____, state that I am a candidate for the office of
_____ in the _____ election. I
further state that I have designated _____ as my authorized
representative at the election at polling sites_____ and absentee
ballot processing sites _____ in _____
County, Arkansas, to observe and ascertain the identity of persons presenting themselves to vote
in person or by absentee for the purpose of challenging any voter in accordance with Arkansas
Code §§ 7-5-312, 7-5-416, and 7-5-417. I further state that I have designated and authorized my
representative named above to be present at the ballot counting locations at
_____ in _____ County, Arkansas
for the purpose of witnessing the counting of ballots by election officials and determining
whether ballots are fairly and accurately counted in accordance with Arkansas Code §§ 7-5-312,
7-5-316, 7-5-413, 7-5-416, 7-5-527, and 7-5-615.

**Representative of a Group**

I, _____, state that I represent the _____
group which is seeking passage/defeat *(circle one)* of the ballot measure entitled
_____ on the ballot in the _____
election at polling sites _____ and absentee ballot processing sites
_____ in _____ County, Arkansas, to
observe and ascertain the identity of persons presenting themselves to vote in person or by
absentee for the purpose of challenging any voter in accordance with Arkansas Code §§ 7-5-312,
7-5-416, and 7-5-417.

**Representative of a Party**

I, _____, state that I am the chair or secretary of the
state/county *(circle one)* committee for the _____ party with
candidates on the ballot in the _____ election. I further state that I
have designated _____ as an authorized party representative at the
election at polling sites _____ and absentee ballot processing
sites _____ in _____ County,
Arkansas, to observe and ascertain the identity of persons presenting themselves to vote in
person or by absentee for the purpose of challenging any voter in accordance with Arkansas
Code §§ 7-5-312, 7-5-416, and 7-5-417. I further state that I have designated and authorized my
representative named above to be present at the ballot counting locations at
_____ in _____ County, Arkansas,
for the purpose of witnessing the counting of ballots by election officials and determining
whether ballots are fairly and accurately counted in accordance with Arkansas Code §§ 7-5-312,
7-5-316, 7-5-413, 7-5-416, 7-5-527, and 7-5-615.

_____
**Signature of Candidate, Group Representative, or Chair/Secretary of the State/County Committee**
Acknowledged before me this _____ day of _____, 20 ___.
Notary Public: _____ My Commission Expires: _____

I do hereby state that I am familiar with the rights and responsibilities of a poll watcher as outlined on the
back of the poll watcher authorization form and will in good faith comply with the provisions of same.

_____
**Signature of the Poll Watcher**
Acknowledged before me this _____ day of _____, 20 ___.
Notary Public: _____ My Commission Expires: _____

I do hereby acknowledge the filing of this poll watcher authorization form with the county clerk's office.

_____
**Signature of County Clerk**

000153

SLIP OPINION

Attachment "C"    **POLL WATCHER RIGHTS AND RESPONSIBILITIES**

A poll watcher may be:
(1) A candidate in person, but only during the counting and tabulation of ballots and the processing of absentee ballots;
(2) An authorized representative of a candidate;
(3) An authorized representative of a group seeking the passage or defeat of a measure on the ballot; or
(4) An authorized representative of a party with a candidate on the ballot.

Official recognition of poll watchers:
(1) Only one (1) authorized poll watcher per candidate, group, or party at any one (1) given time may be officially recognized as a poll watcher at each location within a polling site where voters identify themselves to election officials;
(2) Only one (1) authorized poll watcher per candidate, group, or party at any one (1) given time may be officially recognized as a poll watcher at each location within the absentee ballot processing site where absentee ballots are processed; and
(3) Only one (1) authorized poll watcher per candidate or party at any one (1) given time may be officially recognized as a poll watcher at the counting of the ballots.

Poll watcher credentials:
(1) Except for candidates in person, poll watchers must present a valid affidavit in the form of a "Poll Watcher Authorization Form" to an election official immediately upon entering the polling or counting location.
(2) Candidates in person attending a counting site or absentee ballot processing site are not required to present a "Poll Watcher Authorization Form" but must present some form of identification to an election official immediately upon entering the site for the purpose of confirming the poll watcher as a candidate on the ballot.

Poll watchers may:
(1) Observe the election officials;
(2) Stand close enough to the place where voters check in to vote so as to hear the voter's name;
(3) Compile lists of persons voting;
(4) Challenge ballots upon notification to an election official before the voter signs the precinct voter registration list and upon completing a "Challenged Ballot Form" (see Attachment "A");
(5) Call to the attention of the election sheriff any occurrence believed to be an irregularity or violation of election law. The poll watcher may not discuss the occurrence unless the election sheriff invites the discussion; and
(6) Be present at the opening, processing, and canvassing of absentee ballots for the purpose of challenging absentee votes in the manner provided by law for personal voting challenges.

Poll watchers representing a candidate or political party may:
(1) Remain at the polling site after the poll closes if ballots are counted at the poll;
(2) Be present at the counting of votes by hand or by an electronic vote tabulating device at a central location;
(3) Be present at the counting of absentee ballots for the purpose of witnessing the counting of ballots by election officials and determining whether ballots are fairly and accurately counted; and
(4) Upon request made to an election official, inspect any or all ballots at the time the ballots are being counted.

Poll watchers may not:
(1) Be within six feet (6') of any voting machine or booth used by voters to cast their ballot;
(2) Speak to any voter or in any way attempt to influence a voter inside the polling site or within one hundred feet (100') of the primary exterior entrance used by voters to the building containing the polling site; or
(3) Disrupt the orderly conduct of the election.

000154

SLIP OPINION

ELECTRONICALLY FILED
2014-Mar-12 14:27:53
60CV-14-1019
C06D06 : 10 Pages

Agency # 108.00

# EMERGENCY
# RULES
# FOR
# VOTER IDENTIFICATION
## (Effective January 1; Revised March 4, 2014)



**State Board of Election Commissioners**
**501 Woodlane, Suite 401N**
**Little Rock, AR 72201**
**(501) 682-1834 or (800) 411-6996**
**www.arkansas.gov/sbec**

**ATTACHMENT T** 000155

# TABLE OF CONTENTS

Scope of Rules....................................................................................................3

§ 800 Definitions.................................................................................................3

§ 801 Proof of Identity Required When Voting at the Polls...........................................4

§ 802 Poll Worker Assessment of Validity of Proof of Identity......................................4

§ 803 Additional Identification Requirement for Certain First-Time Voters........................5

§ 804 Failure to Present Proof of Identity or Other Required Documentation at the Polls.........5

§ 805 Identification Required When Voting Absentee.....................................................6

§ 806 Postelection Submission of Identification or Affidavit of Indigence or Religious
    Objection.....................................................................................................6

§ 807 Assessment of Validity of Photo Identification Submitted Postelection...    ..................8

§ 808 Postelection Submission of Affidavit of Indigence or Religious Objection....................9

§ 809 County Clerk to Provide Required Identification or Affidavits to Election Commission...10

§ 810 Vote Counted When Required Identification or Affidavits Properly Submitted............10

§ 811 Effective Date..........................................................................................10

000156

SLIP OPINION

**Scope of Rules**

These rules will set forth the procedures for processing and administering voter identification requirements. These rules are in addition to and not a substitute for the laws of the State of Arkansas and rules promulgated by the Secretary of State.

**§800 Definitions**

(a) Additional Identification Requirement – documentary identification in addition to proof of identity that certain first-time voters who register by mail must show to cast a regular ballot during early voting or at the polls on election day. Acceptable identification documents include a copy of current and valid photo identification, or a copy of a current utility bill, bank statement, government check, paycheck or other government document that shows the name and address of the voter.[1]

(b) Administrator - the administrative head of a long-term care or residential care facility licensed by the state.

(c) Proof of Identity:
    (1) A voter identification card issued by the county clerk pursuant to Act 595 of 2013; OR
    (2) A document or identification card that meets all of the following conditions:
        (a) Shows the name of the person to whom the document was issued;
        (b) Shows a photograph of the person to whom the document was issued;
        (c) Is issued by the United States, the State of Arkansas, or an accredited postsecondary educational institution in the State of Arkansas; and
        (d) If displaying an expiration date, the document or card is not expired or expired no more than four (4) years before the date of the election in which the person seeks to vote.
    (3) Documents or Identification cards that comply with the above requirements for proof of identity may include, without limitation, the following:
        (a) A driver's license;
        (b) A photo identification card;
        (c) A concealed handgun carry license;
        (d) A United States passport;
        (e) An employee badge or identification document;
        (f) A United States Military identification document;
        (g) A student identification card issued by an accredited postsecondary educational institution in the State of Arkansas;

---

[1] A.C.A. § 7-5-201(e) as amended by Act 595 of 2013

000157

(h) A public assistance identification card; and

(i) A voter identification card as provided under Act 595 of 2013 and rules propounded by the Secretary of State[2]

(d) Documentation from the Administrator – a letter on facility letterhead, dated and signed by the administrator which specifically identifies the full name of the resident in the body of the letter and is valid for one year after the date it is signed and issued. The letter issued by the administrator can be used by a resident of a long-term care facility as identification during early voting, on election day at a polling location, and when voting by absentee ballot.[3]

## § 801 Proof of Identity Required When Voting at the Polls

All voters except those who reside in a long-term care or residential care facility licensed by the state must present "proof of identity" to cast a regular ballot at the polls during early voting and on election day.

A person who resides in a long-term care or residential care facility licensed by the state may instead provide documentation from the administrator of the facility attesting that the person is a resident of the facility in lieu of the requirement to present proof of identity before voting[4].

## § 802 Poll Worker Assessment of Validity of Proof of Identity

The proof of identity shall be used to verify the name and appearance of the voter, except that when a voter presents a voter identification card issued by the county clerk pursuant to Act 595 of 2013, the card shall also be used to verify the voter's identification number. The Precinct Voter Registration List shall be used to verify the address of the voter by comparing the voter's address in the list to the address stated by the voter.

The poll worker to whom proof of identity is presented shall:

(1) Verify that the name on the proof of identity is consistent with the name in the Precinct Voter registration list, allowing for abbreviations and nicknames;

(2) If the voter presents a voter identification card issued by the county clerk pursuant to Act 595 of 2013 and rules propounded by the Secretary of State, verify that the registrant identification number on the card is the same as the registrant identification number on the Precinct Voter Registration List.

---

[2] A.C.A. § 7-1-101 as amended by Act 595 of 2013
[3] A.C.A. § 7-5-201(d)(2) as amended by Act 595 of 2013 and §16.0 of the Arkansas Secretary of State's Rules on Voter Identification
[4] A.C.A § 7-5-201(d) as amended by Act 595 of 2013

000158

(3) If the name is consistent, compare the photograph to the voter to determine whether the voter is the person depicted in the photograph, considering hair color, glasses, facial hair, cosmetics, weight, age, injury and other physical characteristics;

(4) If the poll worker is satisfied that the voter is the person depicted in the photograph and the name is consistent with the name in the Precinct Voter Registration List, then issue the voter a regular ballot;

(5) If the voter's name is different from the name in the Precinct Voter Registration List or the name as stated by the voter but the poll worker is satisfied that the voter is the person depicted in the photograph, issue the person a regular ballot after the voter completes a voter registration application form for the purpose of updating the voter's information; and

(6) If the poll worker determines that the proof of identity does not depict the voter, then the poll worker shall offer the voter a provisional ballot.

## § 803 Additional Identification Requirement for Certain First-Time Voters

Certain first-time voters who register by mail and who, when registering to vote do not provide statutorily required identification documentation, will be flagged on the Precinct Voter Registration List for possible additional identification documentation when voting at the polls during early voting or on election day or by absentee ballot. These first-time voters, like all other voters, are required to present proof of identity in order to vote at the polls during early voting or on election day. A flagged voter who presents a valid proof of identity that is also current (not expired) may vote without presenting an additional identification document. However, if a flagged voter presents a valid proof of identity that is not current (i.e., is expired) and valid for the purpose for which it was issued, the flagged voter must also show a current and valid photo identification or a copy of a current utility bill, bank statement, government check, paycheck, or other government document that shows the name and address of the voter.[5]

## § 804 Failure to Present Proof of Identity or Other Required Documentation at the Polls

A person voting at the polls during early voting or on election day who did not present proof of identity, or, if a resident of a long-term care or residential care facility licensed by the state, who did not provide either proof of identity or documentation from the administrator of the facility attesting that the person is a resident of the facility, shall be offered a provisional ballot.[6]

---

[5] A.C.A. § 7-5-201 (e) as amended by Act 595 of 2013
[6] A.C.A. § 7-5-321 as amended by Act 595 of 2013

000161

A first-time voter who registered by mail who did not present the additional identification, if required under §803, shall be offered a provisional ballot.[7]

## §805 Identification Required When Voting Absentee

The absentee voter must submit with the ballot a copy of current and valid photo identification, or a copy of a current utility bill, bank statement, government check, paycheck or other government document that shows the name and address of the voter.[8]

A resident of a long-term or residential care facility licensed by the State of Arkansas may instead provide documentation from the administrator of the facility attesting that the person is a resident of the facility as identification.

The ballot of a voter who failed to provide required identification with his or her absentee ballot shall be considered a provisional ballot.[9]

Uniformed services and merchant marine voters and their spouses and dependents who are away from the county because of the active duty status of a uniformed services or merchant marine member are exempt from the identification requirement for absentee ballots.[10]

## § 806 Postelection Submission of Identification or Affidavit of Indigence or Religious Objection

### A. Voters At the Polls

A provisional ballot cast because a voter failed to present proof of identity when voting at the polls during early voting or on election day shall be counted and included in the certified results of the election if:

(1) The voter's ballot is not successfully challenged for any other reason; and
(2) The voter provides to either the county clerk or the county board of election commissioners by noon on the Monday following the election either the voter's proof of identity or an affidavit that the voter cannot provide proof of identity because of indigence or a religious objection to being photographed.

---

[7] A.C.A. § 7-5-305(a)(8)(B)(iii)
[8] A.C.A. § 7-5-201(d)(1)(B) as amended by Act 595 of 2013
[9] A.C.A. §§ 7-5-412(b); 7-5-321
[10] A.C.A. § 7-5-201(d)(1)(B) as amended by Act 595 of 2013

000159

The voter may provide his or her proof of identity or his or her affidavit of indigence or religious objection to the county board by presenting the proof of identity or the affidavit at any meeting of the county board held before noon on the Monday following the election.

The voter may provide his or her proof of identity or his or her affidavit of indigence or religious objection to the county clerk by presenting the proof of identity or the affidavit to the county clerk before noon on the Monday following the election.

The voter shall present the proof of identity or deliver the affidavit of indigence or religious objection in person.[11]

### B. Absentee Voters

The ballot of an absentee voter that was made provisional for failure to provide required identification with his or her absentee ballot shall be counted and included in the certified results of the election if:

(1) The absentee voter's ballot is not successfully challenged for any other reason; and
(2) The absentee voter provides to either the county clerk or the county board of election commissioners by noon on the Monday following the election the voter's required identification or an affidavit that the voter cannot provide the required identification because of indigence or a religious objection to being photographed.

The absentee voter may provide his or her required identification or his or her affidavit of indigence or religious objection to the county board by presenting the required identification or the affidavit at any meeting of the county board held before noon on the Monday following the election.

The absentee voter may alternatively provide his or her required identification or his or her affidavit of indigence or religious objection to the county clerk by presenting the required identification or the affidavit to the county clerk before noon on the Monday following the election.

The absentee voter shall present the required identification or his or her affidavit of indigence or religious objection by mail, in person by the voter, or in person by a third person designated by the voter.

When the identification is delivered by a third person, it must be accompanied by a written statement of the voter, signed and dated by the voter, stating the person's name and address and that the person has been authorized by the voter to deliver the identification for the voter. Other than the administrator of a long-term care or residential care facility licensed by the state, no person may deliver to the clerk or election commission the identification of more than two

---

[11] A.C.A. § 7-5-321(c) as provided in Act 595 of 2013

000160

absentee voters. If no written statement is included with the required identification delivered by a third person, the ballot shall not be counted.

An administrator of a long-term care or residential care facility licensed by the state may deliver to the clerk or election commission the identification documentation from any of the residents of the administrator's facility who submitted absentee ballots.

### § 807 Assessment of Validity of Photo Identification Submitted Postelection

A. Assessment of Validity of Proof of Identity Submitted Postelection by In Person Voters

The county clerk or county board shall compare the photograph to the voter to determine whether the voter is the person depicted in the photograph, considering hair color, glasses, facial hair, cosmetics, weight, age, injury and other physical characteristics.

The county clerk or the county board receiving a proof of identity shall make a photocopy of the proof of identity and retain the copy with the voter's provisional ballot envelope. The county clerk or the county board shall provide a receipt to the voter containing the following information:

(1) The name of the county clerk, or each county board member present at the meeting where the proof of identity was presented;

(2) The name of the voter who presented the proof of identity;

(3) The date and time the proof of identity was presented to the clerk or county board;

(4) If it is determined that the photograph on the proof of identity depicts the voter, then a declaration of that finding;

(5) If it is determined that the photograph on the proof of identity does not depict the voter, then a declaration of that finding including the reason for that finding; and

(6) Any additional information the clerk or county board deems relevant.

The county clerk or county board shall retain a copy of the receipt.[12]

B. Assessment of Validity of Photo Identification Submitted Postelection In Person by Absentee Voters

---

[12]A.C.A. § 7-5-321(c) as provided in Act 595 of 2013

000162

SLIP OPINION

The county clerk or county board shall compare the photograph to the voter to determine whether the voter is the person depicted in the photograph, considering hair color, glasses, facial hair, cosmetics, weight, age, injury and other physical characteristics.

The county clerk or the county board receiving the required identification shall make a photocopy of the identification and retain the copy with the voter's provisional ballot envelope. The county clerk or the county board shall provide a receipt to the voter containing the following information:

(1) The name of the county clerk, or each county board member present at the meeting where the identification was presented;

(2) The name of the voter who presented the identification;

(3) The date and time the identification was presented to the clerk or county board;

(4) If it is determined that the photograph on the identification depicts the voter, then a declaration of that finding;

(5) If it is determined that the photograph on the identification does not depict the voter, then a declaration of that finding including the reason for that finding; and

(6) Any additional information the clerk or county board deems relevant.

The county clerk or county board shall retain a copy of the receipt.[13]


### § 808 Postelection Submission of Affidavit of Indigence or Religious Objection

The county clerk or county board receiving an affidavit of indigence or religious objection in person shall make a photocopy of the affidavit, provide the copy to the voter and retain the original affidavit with the voter's provisional ballot envelope. The county clerk or the county board shall provide a receipt to the voter containing the following information:

(1) The name of the county clerk, or each county board member present at the meeting where the affidavit was delivered;

(2) The name of the voter who delivered the affidavit;

(3) The date and time the affidavit was delivered to the clerk or county board; and

(4) Any additional information the clerk or county board deems relevant.

The county clerk or county board shall retain a copy of the receipt.

---

[13]A.C.A. § 7-5-321(c) as provided in Act 595 of 2013

000163

000164

### §809 County Clerk to Provide Required Identification or Affidavits to Election Commission

The county clerk who receives required identification or an affidavit of indigence or religious objection shall provide the copy of the voter's required identification or the original affidavit and a copy of the voter's receipt to the county board.[14]

### §810 Vote Counted When Required Identification or Affidavits Properly Submitted

The county board shall count the vote and include it in the certified returns upon receipt of a copy of a voter's valid and timely delivered proof of identity, required identification of an absentee voter, or affidavit of indigence or religious objection.[15]

### §811 Effective Date

These emergency rules are effective upon filing.

---

[14] A.C.A. § 7-5-321(c) as provided in Act 595 of 2013
[15] A.C.A. § 7-5-321(c) as provided in Act 595 of 2013